IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JARED ALLEN, *et al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 17-00222-KD-MU |
| ) | |
| UNCLE JOHN HOLDINGS, LLC, *et al.,* ) | |
| ) | |
| Defendants. ) | |

## ORDER

This action is before the Court on the motion for summary judgment, brief and exhibits

filed by Plaintiffs Jared Allen, Justin Allen, James Hayes, Jason Keezer, Michael Lunsford,

Sanjay Ramachandran, and William Bishop (docs. 79, 80), the response and exhibits filed by

Defendant Momentum GOM, Inc. (doc. 82), and Plaintiffs' reply (doc. 83).  Upon consideration

and for the reasons set forth herein, Plaintiffs' motion for summary judgment is GRANTED.[1]

I.  Factual and procedural background[2]

James Larsen purchased the M/V Uncle John, a semi-submersible dive platform, at

bankruptcy auction with the intent to repair and sell or charter.  Larsen paid the $100,000.00

deposit and another investor, Brian Chang, financed the balance of the purchase price, $1.55

---

[1] The unopposed motion to strike Plaintiffs' jury demand is moot (doc. 85).

[2] "Although the 'facts,' as accepted for purposes of summary judgment, may not be the
actual facts of the case, 'our analysis ... must begin with a description of the facts in the light
most favorable to the plaintiff, and our decision must accept those facts." Feliciano v. City of
Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

million.  Larsen formed Uncle John Holdings, LLC (UJH) and title to the Vessel was transferred to UJH.

Plaintiffs allege that Larsen transferred 50% of his interest in UJH to Brian Chang and they became 50/50 partners. Defendant Momentum GOM, Inc. alleges that after Chang financed the balance due to the bankruptcy court, Chang or a Chang entity became the owner of 100% of UJH, and Larsen had no ownership interest in UJH.

On December 7, 2015, Larsen and his company Momentum Far East PTE Ltd, contracted with Defendant UJH for the purpose of promoting and brokering a "charterparty and/or sale" of the Vessel and to obtain work or services for the Vessel (doc. 82-2).  The Agreement "govern[ed] the scope of work and financial obligations of the Parties." (Id.).  The Agreement obligated Larsen and Momentum Far East, "collectively known as Momentum", to "seek Uncle John's approval in writing, [for] the budget for the works or services to be carried out on the Vessel and its associated items at least five working days prior to the engagement of works or services" and required that "[a]ny invoices from Momentum must be consistent with the approved budget and be evidenced with detailed documents substantiating the work or services successfully completed." (Id., p. 3).  Momentum would be paid "50% of audited net profits after tax for the financial year" less certain items, in the event of a charterparty or "50% of the audited net profits on disposal of the Vessel after tax". (doc. 82-2, p. 5).

The Agreement also contained a provision wherein "[t]he Parties agree that a nominated entity legally associated to [Larsen] may replace [Momentum Far East] in brokering a sale or charter for the Vessel and that it will fulfill all the terms and obligations hereunder." (doc. 82-2, p. 2).  In early 2016, Larsen formed Momentum GOM, Inc., to deal specifically with the M/V Uncle John and substituted it for Momentum Far East as a party to the Agreement.  Larsen is the

sole shareholder of Momentum GOM, Inc. Larsen acted as UJH's representative for repair and recertification of the saturation dive system.  Another person, Peter Murphy, supervised the repairs necessary for the operation of the vessel, such as the engine room, etc.

On July 25, 2016, Larsen through Momentum GOM, Inc., entered into a Consultant Agreement with Plaintiff William Bishop with respect to repairs to the saturation dive system and marketing the Vessel (doc. 80, p. 3, doc. 80-2).  Momentum agreed to pay Bishop $15,000.00 per month for a term of one year (doc. 80, p. 3). Schedule A to the Agreement includes the applicable termination provision.  Specifically, "[t]he notice period for termination of this Agreement after the probationary period without regard to cause is thirty (30) days" (doc. 80-2, p. 7). Bishop began work immediately and arranged for Plaintiffs Jared Allen, Justin Allen, James Hayes, Jason Keezer, Michael Lunsford and Sanjay Ramchandran, saturation dive system technicians, (the Dive Techs) to work on the Vessel.

Around August 3, 2016, UJH brought in another supervisor.  The record is unclear as to whether the new supervisor was to supervise all work on the Vessel or just the repairs to the saturation dive system.  In either circumstance, Larsen was no longer a supervisor. Bishop and the technicians continued to work on the Vessel, but UJH stopped the project on August 24, 2016.  Ultimately, the Vessel was sold for scrap.

Momentum GOM, Inc. paid Bishop for July and August 2016, but he was not paid thereafter.  He seeks to recover $150,000.00 from Momentum GOM, for the remaining 10-months of the one-year term for the Consultant Agreement.

Bishop assisted the technicians with submitting invoices for their work.  The invoices were submitted in the name of another Larsen entity, Momentum Engineering, Inc.[3]  The technicians were not paid.  According to the August time tracking chart, Keezer worked from August 1 through 26, 2016.  Jared Allen worked from August 2 through 26, 2016, with four days off.  Lunsford worked from August 6 through August 20, 2016, with one day off. Hayes worked from August 11 through 26, 2016, with two days off.  Ramachandran worked August 18 through 26, 2016. Justin Allen worked August 23 through 26, 2016 (doc. 80-3, time tracking chart).  They claim the following earned wages:

| | | | |
|---|---|---|---|
| Jared Allen | 21 days | $500.00 per day | $10,500.00 |
| Justin Allen | 4 days | $500.00 per day | $2,000.00 |
| James Hayes | 14 days | $500.00 per day | $7,000.00 |
| Jason Keezer | 26 days | $400.00 per day | $10,400.00 |
| James Lunsford | 14 days | $400.00 per day | $5,600.00 |
| Sanjay Ramachandran | 9 days | $500.00 per day | $4,500.00 |

On May 16, 2017, Plaintiffs filed this action against Defendants Uncle John Holdings, LLC, Blue Capital PTE, Ltd., Momentum Engineering, Inc., and Momentum GOM, Inc. (doc. 1).  UJH and Blue Capital have been dismissed without prejudice for failure to prosecute (doc. 71).  Summary judgment was entered in favor of Momentum Engineering, Inc. and it is no longer a party (doc. 62).

Momentum GOM, Inc. then filed bankruptcy and the action was stayed (doc. 68).  The bankruptcy action was subsequently closed without any discharge of any debts because there were no assets to pay creditors (doc. 75-1).  The Trustee reported as follows: "I have neither received any property nor paid any money on account of this estate; that I have made a diligent

---

[3] Momentum Engineering, Inc. was an entity listed on the UJH and Larsen agreement. However, all references to Momentum Engineering, Inc. were struck.  See Doc. 82-2.

inquiry into the financial affairs of the Debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." (doc. 75-2, Trustee's Report).  The stay was lifted and a revised Rule 16(b) Scheduling Order was entered (doc. 76).

II. Conclusions of Law

      1. Standard of Review

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (Dec. 2010).  Plaintiffs, as the movants, bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

      Once Plaintiffs meet this initial burden, the burden shifts to Defendant, as the non-movant, to show the existence of a genuine issue of material fact that would preclude summary judgment. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movants is to be believed, and all justifiable inferences are to be drawn in [its] favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) (internal quotation omitted) (bracketed text added); Daughtry v. Jenny G. LLC, 703 Fed. Appx. 883, 885 (11th Cir.

2017) (citation omitted) (the district court must "view all of the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.").

    2. Statement of the law

Because the work was done to repair a vessel, the parties invoked the admiralty and maritime jurisdiction of the Court.[4] Diesel "Repower", Inc. v. Islander Investments Ltd., 271 F.3d 1318, 1322–23 (11th Cir. 2001) ("A contract to repair a vessel invokes admiralty jurisdiction."); Shackleford v. Sailor's Wharf, Inc., 770 Fed. Appx. 447, 449, n.1 (11th Cir. 2019) (same). Although the parties have argued under Alabama law, the Court of Appeals for the Eleventh Circuit has explained that "our interpretation of maritime contracts sounds in federal common law, so we look to the general common law of contracts." Internaves de Mex. s.a. de C.V. v. Andromeda S.S. Corp., 898 F.3d 1087, 1093 (11th Cir. 2018). "The elements of a breach of contract claim are the existence of a contract, material breach, and damages." Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Contract No. B0621MASRSWV15BND, 766 Fed. Appx. 795, 803 (11th Cir. 2019).

The same elements are necessary under Alabama law. GRUPO HGM Tecnologias Submarinas, S.A. v. Energy Subsea, LLC, 2019 WL 7879661, at *7 (S.D. Ala. Oct. 31, 2019), report and recommendation withdrawn upon appearance of counsel for defaulting defendants, 2020 WL 609757 (S.D. Ala. Jan. 21, 2020) ("Thus, even if the Energy Subsea Contract is not maritime in nature and is governed by Alabama law, as Grupo initially claimed, the elements of its claim for breach of contract are substantially the same. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's

---

[4] Because Bishop and Momentum GOM are both citizens of Texas, the Court could not have diversity jurisdiction (doc. 1).  28 U.S.C. § 1332.

performance under the contract; (3) the defendant's nonperformance; and (4) resulting

damages.") (internal citation omitted).

"The remedy for breach of contract is damages sufficient to place the injured party in as

good a position as it would have been had the breaching party fully performed." GRUPO HGM

Tecnologias Submarinas, S.A., 2019 WL 7879661, at *8. (citations omitted). "Damages for a

breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the

breaching party at the time of contracting; (2) the breach is a substantial causal factor in the

damages; and (3) the damages are shown with reasonable certainty." Id. (citations omitted).


III. Analysis

    A. Count I

    Plaintiffs Jared Allen, Justin Allen, James Hayes, Jason Keezer, Michael Lunsford,

Sanjay Ramachandran, the saturation dive system technicians (the Dive Techs), bring their

admiralty and maritime claims against Momentum GOM for earned wages for performing

necessary services to the Vessel (doc. 80).  The Dive Techs argue that Larsen entered into a

contract with UJH to work on the Vessel, and to fulfil his obligation, Larsen through his

company Momentum GOM contracted with Bishop to be in charge of repairs to the saturation

dive system.  To meet his obligation, Bishop, on behalf of Momentum GOM, hired the Dive

Techs. (doc. 83).  They point out that Momentum GOM does not dispute the hours worked or the

amounts due. Therefore, the Dive Techs argue that they are entitled to a judgment against

Momentum GOM.

    Momentum GOM argues that it did not hire the Dive Techs and did not have a contract

with them, but instead, they were retained by Bishop to work on the Vessel at the request of

"Larsen and the Uncle John, on behalf of the Uncle John group"(doc. 82, p. 4-5).  Momentum

GOM also argues that the "undisputed testimony demonstrates that Larsen was an authorized

representative of Uncle John Holdings, Inc." (Id.).  Based on the foregoing, Momentum GOM

argues that UJH is responsible for the earned wages.

Bishop stated in his declaration that he "entered into a consulting agreement under which

[he] served as Marine and Diving Superintendent for the M/V Uncle John" and "[u]nder that

contract [his] responsibilities included recruiting saturation technicians and supervising the work

and labor they performed" aboard the Vessel. (Doc. 80-1).  He also stated that the Dive Techs

"were employed by the Defendant [Momentum GOM, Inc.] as saturation dive technicians" (doc.

80-1).

However, he testified at deposition that he "went out and located them . . . to help come

in at the request of - - Jim Larsen and the Uncle John - - on behalf of the Uncle John group."

(Doc 82-3, p. 2).  Momentum GOM argues that the Dive Techs were not hired by Momentum

GOM because Bishop said he retained the Dive Techs on behalf of the "Uncle John group" and

because the invoices were addressed to Momentum Engineering LLC.

First, Bishop did not have a separate agreement with UJH to act on its behalf,

independently of his Consultant Agreement with Momentum GOM.  By saying that he acted "on

behalf of the Uncle John group" Bishop oversimplifies the contractual relationships but does not

change them.  Second, it is clear that Momentum GOM was acting pursuant to the December 7th

Agreement when it delegated to Bishop the responsibility of recruiting the Dive Techs as

saturation dive technicians to repair the vessel.  The Agreement between Larsen, Momentum Far

East, and UJH, the vessel owner, specifically provides that another Larsen entity could be

substituted for Momentum Far East.  The Agreement states as follows: "The Parties agree that a

8

nominated entity legally associated to [Larsen] may replace [Momentum Far East] in brokering a sale or charter and that <u>it will fulfil all the terms and obligation hereunder</u>." (doc. 82-2, p. 2) (underlining added).  The "terms and obligations hereunder" were to perform work or services on the Vessel and then sell or charter it (Id., p. 3).  Momentum GOM has failed to provide sufficient evidence to dispute that Bishop hired the Dive Techs pursuant to the Consultant Agreement with Momentum GOM, and that Momentum GOM was being used to fulfil the obligations of Larsen and the Momentum entities under the Agreement with UJH.

Momentum GOM also argues that even if the Court finds that it initially contracted with the Dive Techs, they were actually working for UJH from August 3 through 24, 2016 because Larsen was no longer involved in the project.  Momentum GOM points out that on August 3, 2016, UJH routed all future work through another supervisor instead of Larsen.  Momentum GOM then argues that with this knowledge, the Dive Techs continued to work; therefore, UJH is responsible for the earned wages after August 2, 2016.

Momentum GOM is correct that the Dive Techs and Bishop continued to work on the Vessel after Larsen was replaced by another UJH representative.   However, there is no evidence that UJH revoked its Agreement with Larsen and the Momentum entities.  Accordingly, this argument has no merit as to Momentum GOM's responsibility for its breach of contract.   As such, the Dive Techs motion for summary judgment as to liability and damages is due to be GRANTED.

B. <u>Count III – Breach of Contract</u>

Plaintiff William Bishop argues that Momentum GOM failed to perform under the Consultant Agreement by failing to pay for ten months of the twelve-month contract.  He argues that the Agreement was never terminated; and therefore, Momentum GOM owes for the full term

9

of the Agreement.  Bishop asserts that according to the terms, either party could terminate the Agreement upon 30 days written notice, but Momentum GOM "never exercised its right to terminate the contract with 30 days' notice" (doc. 80, p. 6).  Bishop seeks damages in the amount of $150,000.00.

Momentum GOM does not dispute the validity of the Consultant Agreement. Momentum GOM does not dispute that Bishop was paid only for July and August of 2016 and was not paid for the full term.  Momentum GOM admits it did not provide written notice of termination and admits it "did not personally provide express, verbal notice of the termination." (doc. 82, p. 9).

Instead, Momentum GOM argues that since the project to repair the Vessel ended in August 2016 and the last effort to revive the project was a conference in October 2016, an objectively reasonable person would have known that the Consultant Agreement for repairs to the Vessel terminated in either August or October 2016.  Momentum GOM argues that it does not owe Bishop for the twelve-month term, but instead, at most would owe Bishop for two months, September and October 2016.  Momentum GOM also argues that at the latest, Bishop knew the Agreement had been terminated on May 16, 2017, when he filed this lawsuit alleging breach of contract.

There is no dispute of fact that Momentum GOM failed to perform under the terms of the Agreement.  Momentum GOM did not pay Bishop as agreed and it did not terminate the Agreement with written notice according to its terms.  And even though Alabama contract law would allow for termination 30 days from oral notice, there is no evidence Momentum GOM provided oral notice of termination.

Momentum GOM argues that a reasonable person would have known or reasonably should have known that the Agreement terminated when the purpose of the Agreement

10

terminated, i.e., when UJH stopped the work on the vessel, and when there was no payment. But Momentum GOM did not cite to any case law, nor has the Court found any authority to support the argument, that a contract or agreement can terminate in this manner, i.e., through the acts of other people, when the Agreement contained an explicit method for termination.   Not paying Bishop was a breach of the Agreement, not an act to terminate the Agreement.  Accordingly, Bishop's motion for summary judgment is GRANTED.


IV. Conclusion

Upon consideration, and for the reasons set forth herein, Plaintiffs' motion for summary judgment as to Count I and Count III is GRANTED.

Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, final judgment shall be entered by separate order.

DONE and ORDERED this the 24th day of July 2020.


**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**